## STATE *v.* JACOBS.

APPEAL from Jackson County.

*George H. Williams* and *John Kelsay* for appellant.

*P. P. Prim* and *B. F. Bonham* for respondent.

By the Court, WALDO, J.:

It appears in this case that the contempt for which the appellant was adjudged guilty, was for an act done in pursuance of a peremptory mandamus from this court. When the writ of mandamus was shown to the court below, the appellant should have been discharged. The writ was a complete defense, unless void as beyond the power of this court to issue it. But the counsel for the respondent was too learned to claim that this court was without power to enforce its judgments and decrees by mandamus. (See *Att'y Gen.* v. *Cushing*, 2 Wis., 507; *Riggs* v. *Johnson County*, 6 Wall., 166; *Douglas* v. *Loomis*, 5 W. Va., 542;

*Jared* v. *Hill*, 1 Blackf., 155; *Ex parte Morris*, 9 Wall, 606; *State* v. *Elmore*, 6 Cald., 531; *Henderson* v. *Winchester*, 31 Miss., 294; *The People* v. *Bacon*, 18 Mich., 253; *State* v. *Judge of Second Judicial District*, 20 La., 521; *Sanders* v. *State*. 16 Central Law Journal, 476.)

Counsel urged, merely, that in the absence from the record of the grounds on which the court below issued the injunction, its action must be presumed to have been lawful, if, under any circumstances whatever, an injunction could have been rightfully issued. In this, counsel overlooks the fact that the officer was acting in obedience to process from this court. The question before us is as to the legality of the judgment and sentence of the court below in this case. It is shown that the appellant acted in obedience to a higher and controlling authority, which absolved him from obedience to the alleged injunction, and exacted obedience to its own commands. The illegality of the injunction was conclusively determined when the mandamus was ordered to go. This court was the sole judge whether occasion existed for issuing the writ. When its discretion was exercised and the writ issued, the sole duty of the court below was to yield obedience to it.

The facts are, that the decree of this court in the case of Harrison Kelly *v.* William Ruble and others, reversing the decree of the court below, was regularly pronounced, was entered on its journal, and a certified copy, with mandate accompanying it, was regularly remitted to the court below to be entered on its records and carried into execution. When the mandamus was issued, it was determined that the alleged injunction, by which the execution of the decree of this court was sought to be stayed, was wholly illegal. That it was correctly so determined counsel hardly deny. The fact was too clear to the contrary. The sheriff of Jack-

son county but discharged his duty as a faithful officer in yielding obedience to rightful authority, and in refusing to obey the illegal order of the circuit court to restore Kelly to the possession of property of which he had been lawfully dispossessed, in pursuance of a decree of this court. The judgment against him must be reversed.

Judgment reversed.

WATSON, C. J., dissenting:

The writ of mandamus was directed to the circuit judge, clerk and sheriff of Jackson county. The sheriff, appellant here, and a defendant in the injunction suit instituted by Kelly against him and the Rubles in the lower court, as well as William Ruble, had been served with the restraining order before the latter made his application for the writ. The writ was served on the clerk and sheriff during the judge's absence, and in obedience thereto an execution was issued by the clerk, who was not included in the restraining order, and placed in the sheriff's hands. The latter served it under Wm. Ruble's direction and with his assistance, by taking the property in controversy out of Kelly's possession and delivering it to Ruble, in direct contravention of the restraining order. The judge had not yet returned, and no step had been taken in the circuit court to dissolve such order or obtain any new direction to the sheriff. For every legal purpose, the writ would have had the same effect if it had been addressed to the clerk and sheriff alone.

Assuming, for the sake of argument, that the supreme court possesses the power to coerce the execution of judgments and decrees entered in the circuit court, in pursuance of its decisions, the question arises upon this state of facts, whether it can exert its authority directly upon the ministerial officers charged by the general law with the duty of

issuing and executing final process on such judgments and decrees, or whether it can only reach them through the instrumentality of the circuit courts themselves. If the latter theory is the correct one, then the writ should not have been directed to the clerk and sheriff at all, and the latter is not protected by it in this proceeding. The supreme court possesses appellate jurisdiction solely, and that extends only to the revision of "final decisions of the circuit courts". (Constitution, §6, art. 7.) Sec. 536 of the civil code is as follows: " The decision of the appellate court shall be given and enforced as provided in this section: Upon an appeal to the supreme court, its decision shall be entered in the journal, and the cause remitted by mandate to the court below for further proceedings as therein directed. * * *
2. If a new trial is not ordered, upon the receipt of the mandate by such clerk, a judgment or decree shall be entered in the journal and docketed in pursuance of the direction of the appellate court, in like manner and with like effect as if the same was given in the court below."

There is no provision for issuing or executing final process on such judgments and decrees except such as are to be found in chapter 3 of the civil code. All returns upon such process must be made to the circuit court, and all proceedings thereon had before that court. Taking all the provisions on the subject together, no other deduction is possible. The statute gives the supreme court no final process, but requires judgments and decrees embodying the principles of its decisions to be entered and docketed in the court below, which are to have the same effect as if "given in the court below." It thus appears that while no final process is given to the supreme court, it is relieved of every duty requiring the employment of such process. It cannot be reasonably contended, in the face of such legislation, that

any authority to use such process results by implication. It has no function to perform requiring the use of any such means. But the plain meaning of the statute is that such judgments and decrees, although entered and docketed under the authority of the supreme court, are to be executed by the circuit court as its own. Being invested by law "with like effect" as if "given in the court below," they virtually become the judgments and decrees of the circuit court. This, of course, gives the same remedies for their enforcement, and none other. The evident object of the statute was to put them on the same footing, in all respects, with final judgments and decrees rendered by the circuit court, and subject to its supervision and control to the same extent in every particular. Then the circuit court is charged with the duty of enforcing such judgments and decrees as its own, and of using its process for that purpose. Does the circuit court stand in any different relation to the supreme court with reference to the execution of such judgments and decrees than with reference to judgments and decrees rendered by itself from which no appeal has been taken? Certainly not. Its duties are the same and it possesses the same powers in each instance. The statute puts them in precisely the same position in the circuit court, and establishes perfect equality between them. If it is the duty of the circuit court, then, to execute such judgments and decrees the same in all respects as its own, upon what principle can any interference of the supreme court be justified that would not equally justify the same interference in respect to judgments and decrees finally rendered by the circuit court itself? Can it directly order and supervise the enforcement in the one case and not in the other? This would be in direct conflict with the positive provision as well as the plain intention of the law.

I conclude, therefore, that it is beyond the power of this court, in any case, to direct or control the execution of a judgment or decree, except through the operation of its appellate powers upon the court charged with that duty, and consequently that the appellant's defense under the writ cannot be maintained.

The constitutional and statutory provisions cited in the discussion of this question suggest another view, which is followed by the same consequences. Does the appellate jurisdiction of the supreme court, attaching upon the original appeal, extend to the execution of a judgment or decree in any case?

The statute providing for appeals invariably denominates the determinations of this court "decisions," not judgments, or decrees. (Title 4, chap. 6, Civil Code.) And these "decisions" are "given and enforced" by entering them in the journal of the supreme court and remitting the "cause" to the court below for further proceedings as directed in the mandate. (§536, *supra*.) The mandate is founded on the "decision," and cannot go beyond it, in directions to the lower court. In cases like the present, the "decision" of the supreme court is fully and completely "enforced," within the meaning of this section, and its mandate executed—for it is only the means employed for enforcing the "decision"— when a judgment or decree, as the case may be, conforming to the principles announced in the decision, has been duly entered and docketed in the circuit court. The statute expressly declaring that such decisions shall be enforced in the manner indicated, and plainly committing all necessary subsequent proceedings to the jurisdiction of the circuit court to which the "cause" is remitted by the mandate, leads irresistibly to the conclusion that with the completion of these steps the appellate jurisdiction terminates. (*Yale* v.

*Heard*, 26 Tex., 639; *Cunningham* v. *Ashley*, 13 Ark., 653.) And this construction is in entire accord with the authorities on similar statutes, which, without a single exception, to my knowledge, hold that when the mandate remitting the "cause" has been regularly issued and filed in the lower court, the appellate court loses all jurisdiction over the subsequent proceedings in such cause. (*Legg* v. *Overbaugh*, 4 Wend., 188; *Rowland* v. *Kreyenhager*, 24 Cal., 52.)

But if the appellate jurisdiction of the supreme court over the execution of such judgments and decrees is conceded in ordinary cases to the fullest extent claimed, it cannot be shown, from either reason or authority, that it exists in a case like the present, where the party claiming the benefit of an enforcement of the judgment or decree has been enjoined, in a distinct original suit, from taking further steps towards its enforcement, by a court of competent original jurisdiction. There are several very respectable authorities holding that the enforcement of such judgments and decrees may be enjoined by distinct, original suits in equity, in courts of competent original jurisdiction, and not one can be produced to the contrary. (1 High on Injunctions, §265; *The Bank of Kentucky* v. *Hancock's Adm'r*, 6 Dana, 284; *Morgan* v. *Hart*, 9 B. Monroe, 79; *Watson* v. *Avery*, 3 W. P. D., Bush, 635; *Davis* v. *Bonar and Kearns*, 15 Iowa, 171; *Massie* v. *Mann*, 17 *id.*, 131.) But while it is conceded that the circuit court may entertain such a suit and render a valid decree in a proper case, it is claimed that the supreme court may examine into the facts alleged as the cause of suit, and either interrupt or refrain from interfering with the proceedings in the circuit court, according to its judgment upon the sufficiency of the cause alleged. And this was the course adopted in this instance. But it

is impossible that this view can be correct.   If the circuit court has jurisdiction in a case of this character, where the facts alleged will justify it granting the relief sought, it must necessarily have it in every other case involving the same subject matter.   That would be the same whether the cause of suit alleged were good or bad.   The jurisdiction of the circuit court to hear and determine whether the facts alleged in either case entitled the complainant to equitable relief, would be just the same.

And the jurisdiction of the circuit court to restrain the execution of the judgment or decree in such new suit, is utterly repugnant to the existence of any jurisdiction in the supreme court, by virtue of the original appeal, to insist on their enforcement, and necessarily terminates it.   Any supervision or control exercised by the supreme court over the circuit court with regard to the proceedings in the new suit involve the exertion of appellate power in that suit. But under our system, the appellate jurisdiction of the supreme court is limited to the review of "final decisions" of the circuit court, and can be conferred even then only by appeal in the mode provided by the statute.   Such is the effect of every former decision of this court on the subject. A cause cannot be brought to this court for review by the writ of mandamus.   The supreme court is authorized to employ it only where it may be proper or necessary to maintain appellate jurisdiction already acquired over a cause by appeal.   (§594 Civil Code.)   And in no instance will it lie to control judicial discretion.   (*Id.*, §583.)   That the issuance of the restraining order was a judicial act is not open to question.   (Civ. Code, §407; 1 High on Injunctions, §15; *Ex parte Hays*, 26 Ark., 510; *McMillan* v. *Smith*, *id.*, 613; *State* v. *Judge of Sixth District*, 28 La., Am., 905.)

In my judgment, therefore, this court had no jurisdiction to employ the writ of mandamus as it did in this instance, no final decision having been reached in the lower court, and no appeal having been taken. None of the authorities cited in opposition to this view will be found, upon careful examination, to be applicable here. The powers of the various courts in which these decisions were announced and the modes of procedure in acquiring and exercising jurisdiction, are widely dissimilar from the authority conferred and the procedure prescribed for this court by the constitution and laws of the state. My opinion, therefore, is that the judgment of the circuit court should be affirmed.