DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEARS 1917 AND 1918.

---

## Shellabarger Elevator Company, Appellee, v. Illinois Central Railroad Company, Appellant.

1. CARRIERS, § 134*—*when shipper is entitled to recover for loss of corn in transit.* A shipper which ships corn to its own order, with a provision in the bill of lading to notify the purchaser, and draws drafts on the purchaser, indorses them and the bills of lading, and deposits them all in a bank, is entitled to recover for grain lost in transit, although the drafts have been paid and the bills of lading surrendered to the carrier, the only corn sold being that actually delivered.

2. WITNESSES, § 224*—*when denial of right of cross-examination is improper.* In an action by a shipper against a carrier for loss of corn in transit, where plaintiff made proof of the amount of grain shipped in each car by the testimony of its agents who weighed it just prior to its being placed in the cars, it was improper to refuse to allow defendant to cross-examine the witnesses as to their recollection of weighing the corn and their knowledge of the scales and the manner of conveying the grain to the car, to determine whether the scales were correct and whether all the corn weighed went into the car.

3. COMMERCE, § 5*—*what is effect of Carmack Amendment on liability of carrier for loss or damage to interstate shipment.* The liability of a carrier for loss or damage to an interstate shipment

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of grain is governed by the Carmack Amendment to the Interstate Commerce Act, and all State statutes and regulations concerning such shipments are superseded.

4. CARRIERS, § 121*—*when not liable for shrinkage of grain in interstate shipment*. A carrier conveying an interstate shipment of grain is not liable under the Carmack Amendment for shrinkage unless such shrinkage is shown to be due to its own fault.

5. CARRIERS, § 138*—*when evidence as to shrinkage of grain from natural causes is improperly excluded*. In an action by a shipper against an interstate carrier for loss of part of an interstate shipment of grain, it was error to refuse to permit the carrier to show that the loss was caused in part, at least, by shrinkage from natural causes.

6. CARRIERS, § 137*—*presumption that shipper knows provisions of bill of lading*. The shipper of an interstate shipment of grain is presumed to know the provisions of the bill of lading.

7. CARRIERS, § 137*—*presumption that contract for interstate shipment of grain is valid*. It must be presumed that a contract for the conveyance of an interstate shipment of grain, as disclosed by the bill of lading, is a binding one.

8. CARRIERS, § 143*—*when provision in bill of lading is controlling as to measure of damages for loss of grain*. The condition in a bill of lading for an interstate shipment of grain, that the liability for loss shall be measured by the value of the grain at the place of shipment, is valid, and controls the measure of damages.

9. INSTRUCTIONS, § 120*—*when improper because not based on evidence*. It is error to give an instruction concerning the stipulated measure of damages for loss of grain by a carrier in transit where there is no evidence to support it.

10. INSTRUCTIONS, § 151*—*when refusal proper*. It is not error to refuse requested instructions which are covered by given instructions.

11. INSTRUCTIONS, § 81*—*when properly refused because referring to particular portions of evidence*. It is proper to refuse requested instructions where they are misleading in referring to particular portions of the evidence.

12. EVIDENCE, § 23*—*what is nature and effect of prima facie*. Prima facie evidence is not conclusive evidence, but is evidence sufficient to prove the averment of which it is prima facie evidence, unless and until it is rebutted by evidence of equal weight.

13. CARRIERS, § 137*—*what does not tend to contradict prima facie evidence of bills of lading as to amount of grain received by carrier*. The fact that the freight for shipments of grain is settled for by the purchaser upon the basis of weight at the destination.

*See **Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly,** same topic and section number.

does not tend to contradict the prima facie evidence shown by the bills of lading that the carrier received a specified amount of grain.

14. CARRIERS, § 137*—*when burden of proof is shifted to carrier in action for loss of grain.* In an action against a common carrier by a shipper to recover for loss of grain in transit, while some proof is required that the grain was not delivered, but slight evidence will be sufficient to shift the burden of proof upon the carrier.

15. CARRIERS, § 137*—*when burden of proof is on carrier to show discrepancy in weights at points of shipment and destination.* In an action by a shipper against a carrier for loss of grain in transit, where the shipper introduces evidence tending to show a discrepancy in the weights at the points of shipment and destination, the burden of explaining it is on the carrier.

16. CARRIERS, § 141*—*when instruction on burden of proof in action by shipper for loss of grain properly refused.* In an action by a shipper against a carrier for loss of grain in transit, an instruction, that defendant was not required to establish by affirmative evidence any defense to plaintiff's cause of action and that the burden of proof was on plaintiff to make out its case by a preponderance of evidence, was misleading, and properly refused.

Appeal from the Circuit Court of Macon county; the Hon. WILLIAM K. WHITFIELD, Judge, presiding. Heard in this court at the April term, 1917. Reversed and remanded. Opinion filed July 14, 1917.

CREA, HOUSUM & HAMILTON, C. C. LEFORGEE, THOMAS W. SAMUELS and GEORGE W. BLACK, for appellant; JOHN G. DRENNAN, of counsel.

VAIL, MILLER & POGUE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The Shellabarger Elevator Company brought this suit to recover from the Illinois Central Railroad Company, as a common carrier of grain, for losses claimed to have been sustained by plaintiff by reason of the failure to deliver at the destination points, parts of three different shipments made by plaintiff. Each

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

shipment consisted of one car of corn. The first car was shipped on January 12, 1914, from Argenta, Illinois; the next January 16, 1914, from Forsyth, Illinois, and the last May 28, 1914, from Emery, Illinois. All were shipped to Memphis, Tennessee. The waybills show the amounts of corn at the initial places of shipment to have been 66,000, 88,020 and 80,250 pounds, respectively, and the losses are alleged to have been 990, 1,380 and 890 pounds from the respective cars. The declaration contains a count on each shipment. The only plea is the general issue. A jury returned a verdict in favor of plaintiff for $41.08. The defendant appeals.

It is contended by appellant that the appellee did not prove that it is the holder of the negotiable bills of lading issued with each car and therefore it is not entitled to recover. The corn was shipped by appellant to the "order of Shellabarger Elevator Co.," Memphis, "notify Yates and Donnellson." Drafts to the amount of 90 per cent of the value of the corn, drawn by appellee on Yates and Donelson, were, with the bills of lading indorsed by the Shellabarger Elevator Company, deposited in a bank. Yates and Donelson paid the freight and the drafts and for whatever corn was received by them at the point of destination and surrendered the bills of lading to appellant, by whom they were produced on the trial. This contention of appellant was recently reviewed on similar facts in *Shellabarger Elevator Co. v. Illinois Cent. R. Co.*, 278 Ill. 333, and *Farmers' Grain Co. of Dorans v. Illinois Cent. R. Co.*, 201 Ill. App. 261. The drafts had been paid and the bills of lading surrendered to appellant. The only corn sold was the corn actually delivered at Memphis; the corn lost, if any, belonged to appellee, and it was entitled to recover therefor.

The appellee made proof of the amount of corn shipped in each car by the testimony of its agents who weighed the corn just prior to its being placed in the

cars.    The scales on which the corn was weighed were
in the elevators of appellee.    The corn was then raised
to the upper part of the elevators and run down again
into the cars.    The appellant, on cross-examination,
was not permitted to examine the witness as to the
condition of the scales and how the grain was moved
from the scales to the car.

The statute (section 118, ch. 114, Hurd's Rev. St.,
J. & A. ¶ 8920) requires railroads to correctly weigh
grain at the time it is received for transportation and
issue to the shipper a bill of lading, "in which shall
be stated the true and correct weight," and, upon neg-
lect to weigh and receipt for the same, the sworn state-
ment of the shipper or his agent, having personal
knowledge of the amount shipped, shall be taken as
true.    The appellee having undertaken to make such
proof by oral testimony, we can see no reason why
appellant was not entitled to cross-examine the wit-
nesses as to their recollection of weighing the corn and
their knowledge of the scales and the manner of con-
veying the grain to the car, to determine whether the
scales were correct and whether all the corn weighed
went into the cars.    We think the cross-examination
was unduly limited.

It is also insisted by appellant that the court erred
in refusing to permit it to show that the loss claimed
was caused in part, at least, by shrinkage from natural
causes.    Objections to this evidence were sustained on
the grounds that the expert was not qualified to testify
on that subject, and that under the statute of Illinois,
any discrepancy in weights could not be explained, and
the liability of appellant to respond therefor avoided
by showing it was caused by natural shrinkage.

Two of the shipments were in January; they were
upwards of two weeks in the cars.    In *Shellabarger
Elevator Co. v. Illinois Cent. R. Co., supra,* a case in-
volving damages for intrastate shipments, the section
of the statute requiring the carrier to deliver at its

destination the full amount of the grain without any deduction from leakage, shrinkage or other loss in quantity of same, was construed and it was there held that a carrier is not liable for loss in weight caused by its natural shrinkage. It is a well-known fact that at certain periods of the year there is more or less shrinkage in the weight of new corn, the amount of shrinkage being dependent on various circumstances, and loss by natural or inherent causes would not appear to be caused by appellant unless its negligence in some way contributed to such loss. (6 Cyc. 381.) The shipments being interstate, the claim for loss and damages is governed by the Carmack Amendment, which provides that the carrier receiving property for transportation to a point in another State shall be liable for any loss, damage or injury to such property caused by it, or any common carrier to which such property shall be delivered, or over whose line it shall pass. The liability of a carrier for loss or damages to an interstate shipment is governed by the federal law and all State statutes, and regulations concerning such shipments are thereby superseded. *Gamble-Robinson Commission Co. v. Union Pac. R. Co.*, 262 Ill. 400; *Boston & M. R. R. v. Hooker*, 233 U. S. 97; *Great Northern R. Co. v. O'Connor*, 232 U. S. 513 [8 N. C. C. A. 53]; *Adams Exp. Co. v. Croninger*, 226 U. S. 491; *Kansas City Southern Ry. Co. v. Carl*, 227 U. S. 639. The only loss or damage the appellant is liable for under the Carmack Amendment is the loss or damage caused by it, and shrinkage would not come within that rule unless the proof should show the shrinkage was caused by it. The ruling on that question was reversible error under both the federal and the State law.

The court instructed the jury that for any corn lost and not delivered, if any, the measure of damages was the market price of such corn in Memphis on the day it should have been delivered. The shipments, being interstate, the shipper is presumed to know the provi-

sions of the bills of lading. The freight paid was only for the corn that was delivered. No freight was paid for the corn alleged to be lost. Section 3 of the conditions attached to the bill of lading provided that: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading." The shipment, being an interstate one, is not governed by, the old Illinois rule, that the carrier must show that the shipper knew of any limitation in the bill of lading and assented to it. The shipper is presumed to know the contract, and the presumption is indulged that it is a binding contract. *Kansas City Southern Ry. Co. v. Carl, supra; Missouri, K. & T. R. Co. v. Harriman Bros.,* 227 U. S. 657; *Phœnix Ins. Co. v. Erie & W. Transp. Co.,* 117 U. S. 312; *Tibbits v. Rock Island & P. Ry. Co.,* 49 Ill. App. 567. Section 10 of the "Uniform Bills of Lading Act," adopted in Illinois in 1911 (chapter 27, Hurd's Rev. St., J. & A. ¶ 2175), provides that the consignor shall be governed by the terms or conditions on the back of the bill, so far as the same are not contrary to law or public policy. Under that act, the condition as to the measure of damages was valid and binding. *Shellabarger Elevator Co. v. Illinois Cent. R. Co., supra.* The condition on the bill of lading that the liability for loss shall be measured by the value of the goods at the place of shipment is valid, and controls the measure of damages. 

While it was stipulated what the cash value of the corn was at the destination, the appellant made the stipulation with the reservation that such stipulation was not an admission that such value was the correct measure of damages. There was no evidence introduced concerning the stipulated measure of damages, and the instruction was erroneous.

It is also argued that the 17th instruction given at the request of appellee, which attempted to inform the

jury as to the meaning of the phrase "loss caused by discrepancies in elevator weights," was erroneous in that it assumed that the weights given in the bills of lading were correct. We do not find any such assumption in the instruction, and the instruction did not give any information concerning the meaning of the phrase, if any was necessary.

It is also contended that the court erred in refusing three instructions requested by appellant. Two of these instructions informed the jury that the bills of lading were receipts and prima facie evidence that appellant received the amount of grain of the specific weight. One of them then told the jury that if the parties settled and paid for the freight on the basis of the weights in Memphis, then neither party would be bound by the weight as disclosed by the bills of lading. Prima facie evidence is not conclusive evidence, but is evidence. sufficient to prove the averment of which it is prima facie evidence unless and until it is rebutted by evidence of equal weight. The prima facie evidence must prevail as to such averment unless it is neutralized or offset by evidence of equal weight, but the fact that freight was settled upon the basis of the weight in Memphis did not tend to contradict the prima facie evidence. The other instruction told the jury that if there was evidence tending to show that the weight as disclosed by the bills of lading was incorrect, then it is incumbent on appellee to establish by a preponderance of the evidence that grain of the weight as disclosed by the bills of lading was actually received. The court at the request of appellant gave eight instructions, three of which pointed out what were the material issues in each count, and all of them informed the jury that unless the material issues or the appellee's case had been proved by a preponderance of the evidence, the verdict must be for the appellant. There was no error in refusing said instructions for the reasons that so much of them as were proper were given

in other instructions, and they were misleading in calling attention to particular portions of the evidence.

The third refused instruction of which complaint is made told the jury that the appellant is not required to establish by affirmative evidence any defense to appellee's cause of action, and the burden of proof was on the appellee to make out its case by a preponderance of the evidence. The appellant undertook to prove that the loss was caused by shrinkage from natural causes. "In an action of this character, against a common carrier, to recover for the loss of goods which the carrier has failed to deliver, the law undoubtedly requires some proof that the goods were not delivered; but slight evidence will be sufficient to shift the burden of proof upon the common carrier." *Chicago & N. W. Ry. Co. v. Dickinson,* 74 Ill. 249; Angell on Carriers, sec. 470; *Woodbury v. Frink,* 14 Ill. 279; *Chesapeake & O. R. Co. v. Radbourne,* 52 Ill. App. 205; 6 Cyc. 518; 5 Am. & Eng. Encyc. of Law 355. If the weights at the points of shipment and destination were as the evidence introduced by appellee tended to prove and there was a discrepancy, then the burden of explaining it was on the appellant. The instruction was very misleading and there was no error in its refusal.

For the reasons pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*